Gary OLSON and Leonard Olson, Plaintiffs and Appellants,

v.

Ervin SPITZER, doing business as Spitzer Implement Company, Defendant and Respondent.

No. 11888.

Supreme Court of South Dakota.

Argued April 29, 1977.

Decided Aug. 30, 1977.

Carlyle E. Richards, Aberdeen, for plaintiffs and appellants.

Michael T. Hogan and Dennis Maloney of Maloney, Kolker, Fritz, Hogan & Johnson, Aberdeen, for defendant and respondent.

DUNN, Chief Justice.

This is an action for damages for an alleged breach of contract. It arises from a written agreement entered into on March 12, 1973, between plaintiffs and Jerome Fischer, a salesman for defendant's implement business in Roscoe, South Dakota. Defendant filed a counterclaim for lost profits due to plaintiffs' failure to make payment under the contract, but this was dismissed upon his motion at the time of trial. Following a trial to the court, the Ninth (now Fifth) Judicial Circuit Court found for defendant. We affirm.

Sometime in March of 1973, one of the plaintiffs, Leonard Olson, stopped by the defendant's implement business and discussed the possible purchase of a John Deere 6600 combine located on defendant's sales lot with Jerome Fischer, one of the defendant's salesmen. During this conversation, Mr. Fischer was asked to look at the plaintiffs' used John Deere 55 combine which they wished to trade in on a new machine.

On March 12, 1973, Mr. Fischer met with plaintiffs at their farm to inspect the old combine proposed to be traded and to dis-

cuss the terms of the purchase of the new combine. After reaching an agreement, Mr. Fischer drew up a purchase order whereby the plaintiffs ordered a new John Deere 6600 gas combine and were to trade in their old combine. According to the purchase order signed by both parties, the new combine was to have the following attachments: straight cutting platform with hydrostatic drive parts, hydraulic reel lift, Melroe pickup, four-row corn head, filler plates, trash screen, cab with air, 18.4 × 26 tires and 11 L × 26 tires, and electro magnetic clutch. The purchase order also included the following clause:

"I (we), the undersigned, hereby order from you the Equipment described below, to be delivered as shown above. This order is subject to your ability to obtain such Equipment from the manufacturer and you shall be under no liability if delivery of the Equipment is delayed or prevented due to labor disturbances, transportation difficulties, or for any reason beyond your control. * * *"

At the time of the sale, however, the combine located on the defendant's sales lot did not have a four-row corn head nor did the defendant have any four-row corn head in his inventory. Mr. Fischer advised the plaintiffs of this, but stated he thought the implement dealer in Webster had an extra one he could obtain. Delivery date was set at June 1, 1973, or harvest time, whichever came first.

The defendant spent the next month trying to obtain the four-row corn head and a feeder housing that was necessary for operation of the combine. Mr. Fischer first contacted Charles Busse, a territory manager with the John Deere Company out of Minneapolis, but was informed that corn heads were on an allocation system, and, since the defendant had not sold one in previous years, he could not now obtain one. In addition to this, Mr. Fischer called John Deere in Minneapolis about obtaining a corn head and was informed that there was no chance of obtaining one. Both the territory manager and Mr. Fischer contacted other dealers in the area to see whether they would transfer a corn head to the defendant, but to no avail.

Around the middle of April 1973, Mr. Fischer informed the plaintiffs of the trouble he was having obtaining the equipment, and the plaintiffs advised him to keep trying. On or about June 1, 1973, Mr. Fischer offered to sell the combine without the unavailable equipment for a lesser sale price, but this was rejected by plaintiffs. On June 12th, Mr. Fischer attempted to return the plaintiffs' uncashed down payment check and cancel the sale, but the plaintiffs refused.

In the month of July, the plaintiffs were making counterproposals to the defendant's offered modification of the contract; however, they were unable to arrive at a satisfactory solution. Finally, the plaintiffs gave notice of "cover" and hired someone to custom combine their crops and later bought a similar combine (with a corn feeder housing and corn head) from the Aberdeen implement dealer. The difference in price and the cost of the custom work constitute plaintiffs' claimed damages in the amount of $4,445.

The trial court found as a fact:

"That Defendant acting through its agents, officers and representatives made due and diligent effort to attempt to locate the additional accessories and equipment required of the contract.

"That Defendant, its officers and agents at all times kept Plaintiffs informed and advised of the difficulties and problems that it was having in locating the additional equipment and accessories necessary and required under the contract. That Plaintiffs advised Defendant to keep attempting to locate said equipment during the spring and early part of summer of 1973.

"That Defendant was unable to locate the necessary equipment from any other implement dealer or from the manufacturer at any time.

"That Plaintiffs, after Defendant could not find the necessary equipment, would not accept any contract modification and rejected the contract without justification or cause."

From these findings of fact, the trial court concluded that defendant had made "due and diligent" efforts to obtain the equipment, but that he was prevented from doing so by reasons beyond his control. The court further concluded that plaintiffs' failure to accept the modification offered by the defendant terminated defendant's responsibility under the contract, and it denied any recovery to plaintiffs.

The plaintiffs question whether the trial court should have found that due and diligent efforts were made for the following reasons: (1) the failure of defendant to send a formal order for a corn head directly to the manufacturing company, and (2) defendant's failure to contact the John Deere Company in Aberdeen where plaintiffs were able to purchase a combine with corn head attachment, and where they had noticed that this company had other corn heads on its lot.

■ The futility in a formal order to the manufacturer is apparent where the territory manager and the Minneapolis office (which had control of the territory) had advised the defendant that he could not obtain a corn head because these scarce items were on allotment based upon prior sales, and he had not had a prior sale.

■ The second contention appears to be equally futile. Because of prior sales of corn heads, the large John Deere Agency in Aberdeen enjoyed a competitive advantage over small town companies in selling combines with corn heads attached. Would it transfer a corn head to defendant so that he could complete a sale in competition with it? It would seem unlikely even if he paid retail price for it, which he was not required to do under the contract. The Aberdeen agency would prefer to make a larger sale of a combine with attached corn head to plaintiffs for obvious reasons, and it made such a sale. Thus we refuse to hold that the trial court was clearly erroneous in its findings on this issue. SDCL 15–6–52(a).

■ The next question to be resolved is whether South Dakota's version of the Uniform Commercial Code controls this situation. SDCL 57–2–2 defines the scope of the section of the Commercial Code dealing with sales, and states that "chapters 57–2 to 57–8, inclusive, apply to transactions in goods * * *." "Goods" are defined at SDCL 57–2–10 to mean "all things * * * which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities * * * and things in action." Clearly, a piece of farm machinery is "goods" and comes within the scope of chapters 57–2 through 57–8.

It is the opinion of this court that SDCL 57–7–37, when read in conjunction with the exculpatory clause, provides the basis for affirming the lower court's opinion. SDCL 57–7–37 provides an excuse for nondelivery of goods by failure of a presupposed condition. It states:

"* * * nondelivery in whole or in part by a seller who complies with §§ 57–7–38 and 57–7–39 is not a breach of his duty * * * if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made * * *."

■ The allocation provisions of SDCL 57–7–38 do not apply to this contract for sale. The contract was to be performed fully or not at all. The John Deere combine with accessories (including the corn head and corn feeder housing) was purchased and sold for a single, lump sum, net price. There was no formula in the contract for computing a price reduction if the unit was delivered without either or both the corn head accessories. Nothing in the contract indicates that the buyers were obliged to accept the combine and then go into the open market to purchase, at retail, if available, either or both corn head accessories. The buyers, under the contract, were not obligated to accept a partial allocation of the missing accessories and SDCL 57–7–38 would not require them to do so. The buyers' exhibits 3, 5 and 6—letters from the buyers to the seller after the seller gave notice of indefinitely delayed delivery of

the missing accessories—made it plain that the buyers would not accept as performance of the contract anything less than ultimate delivery of the corn head accessories.*

At the same time, where the contract was not one subject to the allocation requirement of SDCL 57–7–38, the defendant seller's right to be excused from performance under SDCL 57–7–37 did not depend upon his first making some kind of modification offer to the buyers. "If there is a valid claim of excuse and allocation is not applicable, the only possible result is a complete termination of the contract, unless otherwise agreed by the parties." Comment, Contractual Excuse Based on a Failure of Presupposed Conditions, 1976, 14 Duq.L.Rev. 235, 243–244 (footnote omitted).

Contrary to the buyers' contention, SDCL 57–7–40(2) has no application to this case. Since this is not a case where allocation was possible, there was no "available quota" for the buyers to accept.

The wording of the exculpatory clause, making the transaction "subject to your ability to obtain such Equipment from the manufacturer," supports the application of SDCL 57–7–37 to excuse the seller's performance. The buyers plead the "Purchase Order" containing the clause in their complaint and offered it as an exhibit at trial. It was received as Exhibit 1. They are thus not in a position to contend, as they now do, that the clause is invalid by the terms of SDCL 57–7–42.

In any event, the clause is not barred because it does not purport to obligate the buyers to take a later delivery once the seller claims excuse from delivery. As stated in the official comment to § 2–616(3) of the U.C.C. (SDCL 57–7–42)

"Subsection (3) denies effect to any contract clause made in advance of trouble which would require the buyer to stand ready to take delivery whenever the seller is excused from delivery by unforeseen circumstances."

The clause is valid and tends to establish that the seller's inability to obtain the goods from the manufacturer was not " * * * one of that variety of risks which the parties were tacitly assigning to the promisor by their failure to provide for it explicitly." *Mishara Const. Co. Inc. v. Transit-Mixed Con. Corp.*, 1974, 365 Mass. 122, 310 N.E.2d 363, 367.

Under the Uniform Commercial Code, three conditions must be met before a party is excused from performance. They are: (a) a contingency must occur, (b) performance must thereby be made "impracticable," and (c) the nonoccurrence of the contingency must have been a basic assumption on which the contract was made. *Neal-Cooper Grain Co. v. Texas Gulf Sulphur Co.*, 1974, 7 Cir., 508 F.2d 283. All three of these conditions were met in this case, and defendant seller is thereby excused from performance.

The findings of fact and conclusions of law made by the court are not clearly erroneous and are supported by evidence in the record. SDCL 15–6–52(a); *Johnston v. Eriksson*, 1946, 71 S.D. 268, 23 N.W.2d 799.

Affirmed.

All the Justices concur.

---

* On July 30, 1973, the buyers wrote the seller (Exhibit 7) claiming damages for breach of contract and advising that the buyers had purchased a combine from another dealer. The seller was thereafter under no obligation to continue his efforts to obtain the previously unavailable accessories, and the contract was thereupon terminated with no further obligation upon either party.