Martin J. BOSSE and Virgene T. Bosse, D/B/A Bosse Oil Company and Bosse Oil, Inc., Plaintiffs and Appellants,

v.

Judith A. QUAM and Dwight W. Berglin, Individually, and Quam & Berglin, Certified Public Accountants, Defendants and Appellees.

No. 18747.

Supreme Court of South Dakota.

Considered on Briefs Dec. 8, 1994.

Decided Aug. 23, 1995.

John A. Gors of DeVany Law Office, Vermillion, for plaintiffs and appellants.

Lee A. Magnuson of Lynn, Jackson, Shultz & Lebrun Sioux Falls, for defendants and appellees.

AMUNDSON, Justice.

Bosse Oil Company (Bosse) appeals the trial court's decision to grant partial summary judgment to Quam & Berglin, C.P.A. We reverse and remand for trial.

## FACTS

Judith Quam and Dwight Berglin are certified public accountants (Accountants) who operate offices in Elk Point and Alcester, South Dakota. Martin (Martin) and Virgene Bosse are sole owners of a retail automobile service station in Jefferson, South Dakota, which sells bulk fuel in conjunction with the business. Bosse Oil Company, Inc. (Bosse) is the couple's incorporated business.

Accountants provided professional service to Bosse for approximately seven years prior to this controversy. Accountants filed federal and state tax returns, prepared financial statements, and assisted Bosse in presenting loan applications.

In 1988, the federal tax laws changed to require Bosse to assess tax on fuel sold for agricultural use. The returns and payment were due quarterly. Although the law was amended later that year, Bosse was subject to its mandate for three quarters in 1988.

Martin learned of this new tax, which was to commence in the second quarter of 1988, from a trade publication. Martin collected the taxes from farmers starting April 1, 1988, and placed the money in Bosse's general accounts. Martin calculated the tax due based on his own records and collected the tax accordingly. Thereafter, he submitted his records to Accountants to prepare the relevant tax forms.[1]

It is undisputed that Accountants negligently prepared three federal excise tax returns on the 1988 agricultural fuel sales. Although Martin collected the taxes on agricultural use for each of these three quarters, Accountants did not include them in Bosse's quarterly returns. As a result, Bosse grossly underpaid the amount of federal tax due. In June 1991, Bosse received notice of an audit from the IRS. Accountants aided Bosse until the audit was completed on November 6, 1991, by gathering necessary documents, reviewing figures, and representing Bosse during the audit hearing. Bosse was assessed back taxes, penalties and interest. Bosse paid the taxes and interest; Accountants paid the penalty.

In early 1992, Bosse terminated its professional relationship with Accountants, but did not file suit until December 18th of that year.

Accountants filed a motion for judgment on the pleadings, which was converted into a motion for partial summary judgment. The trial court granted partial summary judgment and held that any causes of action arising from the second and third-quarter returns were barred under SDCL 15–2–14.4. Although the trial court recognized the "continuing relationship doctrine" as an exception to SDCL 15–2–14.4, it ruled Bosse's relationship with Accountants did not fall within this exception. The court held that Bosse's only claim was for the fourth-quarter return. Bosse appeals.

---

1. The dissent in this case states that Bosse withheld information from the accountants and knowingly withheld taxes owed the IRS. These two conclusions espoused by the dissent were not issues argued or considered by the trial court in regards to the statute of limitations issue. Further, this record reflects that Bosse maintained daily records on his sales. This data was placed on a form prepared by accountants which was delivered to the accountants at the end of each month for them to prepare the 720 forms to be filed with the IRS. After the accountants had completed the form, Bosse would pick same up to forward to the IRS along with his payment of tax owed, as determined by accountants. Finally, there is a dispute in the testimony concerning whether or not Bosse advised accountants regarding the new federal fuel tax, but the record does show that accountants prepared other 720 forms for their other clients and properly included the amount owed on the new tax on those forms.

## ISSUES

I. WHETHER SOUTH DAKOTA REC-OGNIZES THE CONTINUING REP-RESENTATION DOCTRINE AS AN EXCEPTION TO THE STATUTE OF LIMITATIONS FOR ACCOUN-TANTS' MALPRACTICE UNDER SDCL 15–2–14.4?

II. WHETHER BOSSE'S RELATION-SHIP WITH ACCOUNTANTS FALLS WITHIN THE CONTINU-ING REPRESENTATION DOC-TRINE TO TOLL THE STATUTE OF LIMITATIONS FOR CAUSES OF ACTION ON THE SECOND AND THIRD QUARTER RETURNS.

## STANDARD OF REVIEW

The standard of review on a motion for partial summary judgment is well settled. Partial summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the moving party clearly shows that there is no genuine issue of material fact. *North Star Mut. Ins. Co. v. Kneen,* 484 N.W.2d 908, 910 (S.D.1992). "Our task on appeal is to deter-mine only whether a genuine issue of materi-al fact exists and whether the law was cor-rectly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is prop-er." *Miessner v. All Dakota Ins. Associates,* 515 N.W.2d 198, 200 (S.D.1994); SDCL 15–6–56(c).

■ Our review of the trial court's grant of partial summary judgment to Accountants on the basis that no "continuous representa-tion" existed between the parties also in-volves the interpretation of SDCL 15–2–14.4. *Schoenrock v. Tappe,* 419 N.W.2d 197, 201 (S.D.1988) (citations omitted). Statute of limitations' questions are normally left for the jury. *Id.* However, the construction of a statute and its application to particular facts present a question of law, reviewed *de novo. Id.; Johnson v. Rapid City Softball Ass'n,* 514 N.W.2d 693, 695 (S.D.1994).

## DECISION

*I. Continuous Representation Doctrine Ap-plied to Accountant Negligence.*

Bosse argues the continuing representa-tion doctrine is an exception to the statute of limitations for Accountants' malpractice un-der SDCL 15–2–14.4. Although we have rec-ognized this doctrine in conjunction with medical and legal malpractice, it is a question of first impression in the area of accountant negligence.

South Dakota's accountant liability statute, SDCL 15–2–14.4, provides:

Any action against a licensed public ac-countant, his agent or employee, for mal-practice, error mistake, or omission, whether based on contract or tort, may be commenced only within four years after the alleged malpractice, error, mistake or omission has occurred.

The time limitation to bring a claim under this statute begins on the "occurrence" of the accountant's negligent act.

■ In the area of medical malpractice, however, this court has carved an exception to the statute of limitations. This exception prevents the statute of limitation's clock from ticking when the alleged harm is the result of a continuing tort. *See Wells v. Billars,* 391 N.W.2d 668 (S.D.1986); *Alberts v. Giebink,* 299 N.W.2d 454 (S.D.1980). In *Wells,* the court tolled the statute of limitations for torts arising out of a physician's "continuing treat-ment" until the doctor-patient relationship ended. *Id.* at 673. The rationale behind this doctrine was to prevent the refusal to seek or administer health care due to pending litiga-tion when treatment may be desperately needed. *Id.,* 391 N.W.2d at 672.

The "continuing treatment doctrine" was extended to legal malpractice in *Schoenrock,* 419 N.W.2d at 200. Creating an exception to the usual three-year statute of limitation for attorney malpractice actions, *Schoenrock* fol-lowed the *Wells* decision, holding that "con-tinuous representation" halts the commence-ment of the limitations period until the attor-ney-client relationship ends. *Id.* (citing R. Mallen and B. Levitt, *Legal Malpractice* § 391 (1981)). The court limited the doc-trine's use to only those cases where there is

a "clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney[.]" *Id.* (citing *Muller v. Struman,* 79 A.D.2d 482, 485, 437 N.Y.S.2d 205, 208 (1981); *Citibank NA v. Suthers,* 68 A.D.2d 790, 418 N.Y.S.2d 679 (1979); *Grago v. Robertson,* 49 A.D.2d 645, 370 N.Y.S.2d 255 (1975)).

As this court explained in *Schoenrock,* what is protected is "not merely continuity of a general professional relationship." *Id.,* 419 N.W.2d at 201 (citations omitted). Instead, it is the cause of action which results from the underlying condition caused by the professional's ongoing negligent behavior. *Id.* Once the act of malpractice occurs, the doctrine only applies to acts of malpractice arising from the "performance of the same or related services." *Id.* Given these parameters, the *Schoenrock* court refused to extend the doctrine to the plaintiff because "there simply was no continuity in the parties' relationship." *Id.* The court held the plaintiff's action barred.

The next case to address the issue, *Kurylas, Inc. v. Bradsky,* 452 N.W.2d 111 (S.D. 1990), reemphasized the need for an ongoing relationship to trigger the exception. The facts of the case revealed that, soon after attorney Bradsky failed to file a financing statement, he withdrew and arranged for alternative counsel for Kurylas' business affairs. The *Kurylas* court held that such minor contacts between the attorney and client did not establish a continuing relationship after the negligent act occurred. According to the court, Kurylas did not carry his burden of proof to toll the statute.

■ Since accountants are held to the same standard of professional care as doctors and lawyers, we conclude that the "continuous relationship" exception applies to the statute of limitations for accountant liability under SDCL 15–2–14.4. *See Lien v. McGladrey & Pullen,* 509 N.W.2d 421, 423 (S.D. 1993).

*II. Bosse's Relationship With Accountants Within Doctrine.*

As this court held in *Kurylas,* the burden to establish the continuous representation

doctrine falls on the party requesting its benefit.

> [I]n summary judgment proceedings where the defendant asserts the statute of limitations as a bar to the action, and presumptively establishes the defense by showing the case was instituted beyond the statutory period, the burden then shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations, e.g., fraudulent concealment of the cause of action.

452 N.W.2d at 117 (citations omitted). "This applies to the continuous representation doctrine as well." *Id.* Bosse therefore has the burden to prove an existence of material facts to invoke the exception to SDCL 15–2–14.4. We believe the facts of this case fall within this exception.

■ "Continuity" means "quality or state of continuing without essential change: uninterrupted persistence of a particular quality." Webster's Third New International Dictionary, Unabridged, 493 (1976). "Continuous" means "stretching on without break or interruption." *Id.* The record reflects Accountants' involvement with the 1988 returns was "continuous" and did not end when the returns were filed. Testimony by Martin and Accountants shows that Accountants represented Bosse in the IRS audit of the 1988 returns.[2] Accountants' representation involved significant review and recalculation of the 1988 returns. A summary of Martin's deposition testimony is as follows:

> In June 1991, Martin received notification of the impending IRS audit of the 1988 excise tax returns. He immediately informed Accountants. Within a few days of receiving this notice, accountant Berglin reviewed the returns and informed Martin he had discovered a substantial underpayment. Berglin obtained a power of attorney from Martin for the purpose of representing Bosse during the audit process. Berglin and Bosse collected all available documentation for review by the IRS auditor. The auditor reviewed Bosse's tax in-

---

**2.** Although Accountants' representation of Bosse during the IRS audit is a crucial evidentiary

point, counsel neglected to emphasize this fact to the trial court or to this court.

formation in Accountants' offices and periodically conferred with Berglin regarding the 1988 returns. During the course of the audit, Martin and Berglin went over the fuel tickets together to determine what mathematical or clerical errors could have been made and to ascertain what was actually owed to the IRS. After the tax deficiency had been determined, Berglin attended a meeting with Martin and several IRS agents in November, 1991. The purpose of this meeting was to set a schedule for payment of all taxes owing. Berglin retained a former IRS agent, who attended the meeting to assist him and Martin in dealing with the IRS agents. At this meeting, Martin agreed to prompt repayment of the deficiency.

Accountants' representation obviously involved significant review and recalculation of the 1988 returns subsequent to filing.

■ Consistent with Martin's testimony, Accountant Berglin admitted that he represented Bosse throughout the audit. A summary of Berglin's statements provides:

Normally, he accompanies clients to audit proceedings if the client requests his assistance, and considers that part of his services. When an IRS agent notified Berglin of a $50,000 excise tax deficiency, Berglin and Martin reviewed the fuel tickets together to determine if there were mathematical or clerical errors which might reduce the amount owed to the IRS. Berglin admitted that Martin gave him a power of attorney to represent Bosse in the IRS audit. He never billed Bosse for this representation. Berglin met with IRS agents during the course of the audit and answered questions regarding Bosse's tax returns. Berglin and Martin recalculated the amount of excise tax due, and submitted that figure to the IRS for approval. Berglin also participated in the repayment negotiations with the IRS.

Accountants cannot rise above this testimony to "claim a better version of the facts" than what was previously given. *Parsons v. Dacy,* 502 N.W.2d 108, 111 (S.D.1993). Unfortunately, the trial court was denied the opportunity to consider this testimony, since Bosse failed to set forth Accountants' contin-

ued representation until the completion of the audit. However, our scope of review on review of summary judgment extends to the entire record. *Piner v. Jensen,* 519 N.W.2d 337, 339 (S.D.1994). "We are not bound by the factual findings of the trial court and must conduct an independent review of the record." *Id.* (citations omitted). Accountants' testimony comports with case law establishing the continuing representation doctrine.

In *Boone v. C. Arthur Weaver Co., Inc.,* 235 Va. 157, 365 S.E.2d 764 (1988), the Virginia Supreme Court held that the accountants representation of a client during an audit tolled the statute of limitations. *Boone* presented facts where, in March 1976, the accounting firm recommended the acquisition and liquidation of an asset and advised its client the transaction would be tax free. The client followed the advice. In March and April 1977, the firm prepared the client's tax return to reflect this "tax-free" transaction.

After the return was filed, the client and the firm learned that mistakes were made in preparing the return. However, the firm informed the client that the transaction fell within a "gray area" of tax law and no amended return was necessary. The IRS audited the return. The accounting firm in *Boone* represented the client during the audit and defended the handling of the transaction. The IRS assessed additional taxes, interest and penalties arising out of the transaction. After the audit was completed in August 1980, the accountants performed no further accounting services for the client. The client brought a negligence suit on June 24, 1981, over three years after the erroneous filing.

The firm argued that the client's claim in *Boone* was barred by the three-year statute of limitations. It noted the faulty advice was given in 1976, the erroneous return was filed in 1977, yet suit was not filed until 1981. The court rejected this argument and delayed the commencement of the statute of limitations period until after the audit. *Id.* 365 S.E.2d at 766. It held that a continuing relationship existed between the accountant and client throughout the audit. *Id.* at 766–67. The court wrote:

[T]he defendants [the accounting firm] gave continuing or recurring attention to the matter in question over a period of time. During that time. the client relied on the defendants' advice and on the defendants' efforts to extricate the client or to avert or minimize the damage. The defendants' remedial services, while not requested or anticipated at the beginning of the undertaking, were all related to the original matter for which the defendants' services had been engaged. The undertaking occurred within a larger professional relationship wherein the defendants rendered other services to the client.

Because [defendants were] engaged in the defense of [the client] throughout the course of the audit proceedings, which terminated in August 1980, the particular undertaking which forms the basis of this action did not end until that month and only then did the statute of limitations begin to run.

*Id.* at 767.

*Boone* instructs that the statute is tolled when the professional's ongoing services relate to the same underlying subject matter for which services were rendered. This ruling coincides with our writings on the continuous relationship doctrine. In *Schoenrock,* we opined:

[U]nder the continuous representation doctrine, the accrual of a malpractice cause of action will be tolled until the "representation" (or "treatment" in medical malpractice cases) terminates ... [T]he continuous representation doctrine applies only to malpractice actions when there is a "clear indicia of an ongoing, continuous, developing, and dependent relationship between the client and the attorney...." This relationship is one "which is not sporadic but developing and *involves a continuity of the professional services from which the alleged malpractice stems.*" Furthermore, the application of this doctrine should only be applied where the "professional's involvement after the alleged malpractice is for the performance of the same *or related services* and is not merely continuity of a general professional relationship."

419 N.W.2d at 200–01 (citations omitted). *See also Keegan v. First Bank of Sioux Falls,* 519 N.W.2d 607 (S.D.1994); *Kurylas,* 452 N.W.2d 111.

Here, Accountants certainly maintained "a continuity of the professional services from which the alleged malpractice stems." When the IRS announced its intention to audit the 1988 fuel returns, Accountants immediately proceeded to review these returns and to advise Bosse of the anticipated tax deficiency. They assisted Bosse in collecting the relevant tax information for submission to the IRS. They communicated with the IRS as Bosse's agent. While their assistance was not anticipated when the returns were filed, their involvement during the audit directly relates to their preparation of the 1988 fuel tax returns. As in *Boone,* Accountants' representation of Bosse was intended to avoid or minimize any damages resulting from the erroneous 1988 returns.

Accountants' continued representation of Bosse throughout the audit process effectively tolled the statute of limitations for accountant malpractice until November, 1991. At this point, the audit was completed and Accountants' representation of Bosse ceased. Bosse therefore satisfied the four-year limitations period in filing its complaint one year later, in December, 1992. Summary judgment was inappropriate and we reverse and remand for trial.

MILLER, C.J., and KONENKAMP, J., concur.

WUEST, Retired J., and SABERS, J., dissent.

GILBERTSON, J., not having been a member of the Court at the time this case was submitted, did not participate.

SABERS, Justice (dissenting).

I have no quarrel with the majority's *discussion* of the continuing representation doctrine as it applies to accountant's malpractice and statutes of limitation. However, it should not apply here because, from day one, Bosse knew exactly what he was doing. He was attempting to get by without paying the tax even though he knew he owed it and had

collected it from the farmers. He even placed the money in his own "general accounts."

The majority opinion says it best and makes it clear:

> Bosse learned of this new tax, which was to commence in the second quarter of 1988, from a trade publication. Bosse collected the taxes from farmers starting April 1, 1988, and placed the money in Bosse's general accounts. Bosse calculated the tax due based on his own records and collected the tax accordingly. Thereafter, he submitted his records to Accountants to prepare the relevant tax forms ...
>
> Although Bosse collected the taxes on agricultural use for each of these three quarters, Accountants did not include them in Bosse's quarterly returns. As a result, Bosse grossly underpaid the amount of federal tax due. In June 1991, Bosse received notice of an audit from the IRS.

The obvious reason that the accountants did not include these taxes in Bosse's quarterly returns was that Bosse withheld that information from them. He did not tell them that there was a new federal fuel tax, that he learned of it from a trade publication, that he calculated it and collected it from the farmers *or* that he placed the money in his own general accounts. The accountants' oversight or neglect has little or nothing to do with this situation.

As I stated in *Dacy v. Gors,* 471 N.W.2d 576, 581 (S.D.1991) (Sabers, Justice, dissenting): "A basic premise of the law is that a person cannot profit from [his] own wrong." Here, Bosse is attempting to force his accountants to help him pay the fuel taxes that he legally owes. I'll have no part of his scheme. He legally owes the taxes, the interest and the penalties thereon because he knowingly withheld the taxes from the IRS and caused this interest and these penalties. If the law helps him get by with this, then the law is an "ass." *

Bosse testified to his conduct concerning the new tax. He cannot claim a more favorable version of the facts than his own testimony. *Miller v. Stevens,* 63 S.D. 10, 256 N.W. 152, 155 (1934). The trial court reached the right result for the wrong reason. *Kehn v. Hoeksema,* 524 N.W.2d 879, 881 (S.D.1994). We should affirm.

WUEST, Retired J., joins this dissent.

---

* As in Oliver Twist, if the law supposes that a wife acts at the direction of her husband, the law is "a[n] ass—a[n] idiot." Charles Dickens, Oliver Twist, Chapter 51 (1890).