1998 SD 48

**Marjorie BECKEL and Kenneth Beckel, Plaintiffs and Appellants,**

v.

**Dr. Bernard C. GERBER, Gerber Professional Association, Inc., St. Luke's Midland Regional Medical Center, and other John Doe Medical Care Providers unknown, Jointly and Severally, Defendants and Appellees.**

No. 20018.

Supreme Court of South Dakota.

Considered on Briefs March 23, 1998.

Decided May 20, 1998.

---

Richard L. Russman of Rice and Ewinger, Aberdeen, for plaintiffs and appellants.

Edwin E. Evans and Lori Purcell Fossen of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for defendants and appellees Dr. Gerber and Gerber Professional Assn.

Reed Rasmussen of Siegel, Barnett & Schutz, Aberdeen, for appellee St. Luke's Regional Medical Ctr.

MILLER, Chief Justice.

[¶ 1.] Majorie Beckel (Marjorie) suffered the loss of use of a kidney in 1994. She alleges it occurred because, in 1979, Dr. Bernard Gerber had negligently placed a metal hemoclip in her body cutting off the blood flow to her ureter. Marjorie and her husband (collectively referred to as Beckels) brought suit against Dr. Gerber and St. Luke's Midland Regional Medical Center in Aberdeen, South Dakota (Hospital). The trial court granted summary judgment to Dr. Gerber and Hospital holding the statute of limitations had run. It also held the continuing tort exception was not applicable to toll the statute of limitations. Beckels appeal, we affirm.

## FACTS

[¶ 2.] Marjorie underwent a hysterectomy at Hospital on January 15, 1979. Dr. Gerber performed the surgery and has not treated her since the time of the surgery.

[¶ 3.] Beckels allege that during the surgery a metal hemoclip[1] was negligently placed over Marjories's ureter, eventually causing her to lose the use of one of her kidneys. Beckels first became aware of the alleged malpractice on March 25, 1994, and filed suit on June 9, 1994.

[¶ 4.] On September 15, 1996, Beckels filed a motion for partial summary judgment. Hospital and Dr. Gerber each filed cross motions for summary judgment. After a hearing, the trial court granted summary judgment in favor of Dr. Gerber and Hospital. The court held the statute of limitations for medical malpractice actions had run. It also ruled the continuing tort exception was not applicable to toll the statute of limitations in this case. Finally, the trial court declined to consider Beckels' constitutional challenge to the medical malpractice statute of limitations because proper notice was not given to the attorney general. Beckels appeal, raising the following issues:

1. Whether the trial court erred in granting summary judgment to Dr. Gerber and Hospital.

2. Whether the trial court erred in denying Beckels' motion for partial summary judgment.

3. Whether SDCL 15–2–14.1 is unconstitutional as violative of the open courts provision of the South Dakota Constitution.

## STANDARD OF REVIEW

[¶ 5.] The standard under which we review summary judgment is well settled: "Summary judgment shall be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. All reasonable inferences drawn from the facts must be viewed in favor of the nonmoving party. The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. On the other

---

1. Hemoclips are used in a manner and for a purpose similar to stitches and sutures.

hand, '[t]he party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment.'"

*Schultz v. Dew*, 1997 SD 72, ¶ 11, 564 N.W.2d 320, 322 (quoting *Ward v. Lange*, 1996 SD 113, ¶ 10, 553 N.W.2d 246, 249). Statute of limitations questions are usually to be resolved by a jury. *Schoenrock v. Tappe*, 419 N.W.2d 197, 200 (S.D.1988). Summary judgment is proper on statute of limitations issues only when application of the law is in question, and not when there are remaining issues of material fact. *Kurylas, Inc. v. Bradsky*, 452 N.W.2d 111, 113 (S.D.1990).

## DECISION

[¶ 6.]  **1.  Whether the trial court erred in granting summary judgment to Dr. Gerber and Hospital.**

[¶ 7.]  **2.  Whether the trial court erred in denying Beckels' motion for partial summary judgment.**

[¶ 8.]  Because they are interrelated, Beckels' first two arguments will be considered together.

[¶ 9.]  SDCL 15-2-14.1 is our statute of limitations for medical malpractice actions and provides, in relevant part:

An action against a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts for malpractice, error, mistake or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice, error, mistake or failure to cure shall have occurred[.]

We have consistently held that this statute of limitations is an occurrence rule, which begins to run when the alleged negligent act occurs, not when it is discovered. *Schoenrock*, 419 N.W.2d at 199; *Alberts v. Giebink*, 299 N.W.2d 454, 456 (S.D.1980).

[¶ 10.]  We have recognized exceptions to toll the running of the statute of limitations. One such exception applies if there is a continuing tort, under which the statute is tolled until "the wrong terminates." *Alberts*, 299 N.W.2d at 456. This "continuing tort" theory was extended to provide for another exception known as the "continuing treatment" rule. *Wells v. Billars*, 391 N.W.2d 668, 671 (S.D.1986); *see also Bruske v. Hille*, 1997 SD 108, ¶ 15, 567 N.W.2d 872, 877; *Bosse v. Quam*, 537 N.W.2d 8, 10 (S.D. 1995). For the continuing treatment rule to toll the statute of limitations, "there must be an 'on-going, continuous, developing and dependent relationship.'" *Bruske*, 1997 SD 108, ¶ 15, 567 N.W.2d at 877 (citing *Schoenrock*, 419 N.W.2d at 201; *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 114 (S.D.1993)).

[¶ 11.]  There is no question that the doctor/patient relationship between Dr. Gerber and Marjorie ended in 1979. Therefore, the continuing treatment rule is not applicable to this case. However, Beckels argue that the alleged negligent placing of the hemoclip constituted a continuing tort thus tolling the statute of limitations. We do not agree.

[¶ 12.]  All the parties attempt to reconcile our decision in *Alberts* with the facts in this case. In *Alberts*, we applied a continuing tort theory to medical malpractice actions. There, a Steinmann pin was inserted into the plaintiff's knee to provide traction as a method of alleviating pressure on the plaintiff's injured pelvis. *Alberts*, 299 N.W.2d at 455. The pin was supposed to be removed, but it remained in the plaintiff's knee without his knowledge. *Id.* The plaintiff did not institute a suit until twelve years later. *Id.* The trial court dismissed the action because it held the statute of limitations had run. *Id.* We reversed the trial court's decision because of our adoption of the continuing tort exception for medical malpractice cases, stating

[W]e find that the negligence complained of is not the insertion of the Steinmann pin, but rather the failure to remove the pin when it was reasonably and medically necessary to do so, or to gain plaintiff's informed consent to leave it in his knee. The record before the court on the motion to dismiss shows no final act or occurrence sufficient to commence the running of any

statute of limitations. The record is incomplete as to whether defendants intended to remove the pin or whether they informed plaintiff of the pin and their intent to remove or not remove the pin. 299 N.W.2d at 456.

[¶ 13.] In the present case, the trial court granted summary judgment to Dr. Gerber and Hospital, because it was not intended that the clip ever be removed. Beckels argue the alleged wrong in this case was not only placing the clip over the ureter, but also failing to remove the clip when it was reasonably and medically necessary to do so. They argue that *Alberts* is not distinguishable from this case, and whether the clip was intended to be removed is irrelevant.

[¶ 14.] We hold that whether the clip was to be removed is relevant and is a critical distinction between this case and our decision in *Alberts*. In *Alberts*, we held that the negligence was not the insertion of the pin, "but rather the failure to remove the pin when it was reasonably and medically necessary to do so, or to gain plaintiff's consent to leave it in his knee." 299 N.W.2d at 456. A case similar to *Alberts*, and one in which a federal court applied our holding in *Alberts*, was *Jumper v. Healthone Corp.*, 699 F.Supp. 220, 221 (D.S.D.1988). In *Jumper*, a drain was placed into a patient to help drain a wound after surgery. *Id.* at 221. The drain was inadvertently left in the patient and the statute of limitations had run by the time the patient realized the negligence. *Id.* The court, in applying our continuing tort rule, and tolling the statute of limitations, held: "Any negligence involved was the result not of the placement of the drain, but rather of the failure to remove the drain. If such removal was in fact part of the intended treatment, then it cannot really be said that the treatment is completed until such time as the object is removed." *Id.*

[¶ 15.] In *Alberts* and *Jumper*, foreign objects that were supposed to eventually be removed from a patient were left in the patient, thus causing future injury. In the present case, however, the clip was not ever supposed to be removed. It was to serve a function similar to a suture or stitches. The only negligent act that could have occurred was when the clip was put into place during the surgery.

[¶ 16.] Beckels argue that Dr. Gerber had a duty to inform Marjorie that he was leaving the clip inside her. They base their argument on language from *Alberts*, wherein we stated "that generally a surgeon who knows or has reason to believe that he left a *foreign object* in his patient's body has a duty to disclose that fact, absent sound medical reason otherwise." 299 N.W.2d at 456 (citation omitted) (emphasis added). Both sides argue over what constitutes a "foreign object" so as to create a duty to inform.

[¶ 17.] Cases from other states are informative in defining a "foreign object" for purposes of tolling the statute of limitations.[2] The general consensus seems to be that objects intentionally placed within a body, and with the intention that they remain therein, do not qualify as "foreign objects" so as to toll the statute of limitations. In *Rockefeller v. Moront*, 81 N.Y.2d 560, 601 N.Y.S.2d 86, 88, 618 N.E.2d 119, 121 (1993), a surgeon allegedly placed a suture over a patient's vas deferens[3] during a hernia operation. The patient filed suit nineteen years later when it was discovered that he was sterile because of the mistake. *Id.* The court refused to toll the statute of limitations under the foreign objects exception because "[a] fixation device, in this case, suture material, intentionally placed in the body and not left there in the course of some later procedure in which it should have been removed, does not constitute a 'foreign object[.]'" *Id.* 601 N.Y.S.2d at 89, 618 N.E.2d at 122 (citations and internal quotations omitted). *See also Mitchell v. Abitol*, 130 A.D.2d 633, 515 N.Y.S.2d 810, 811

---

2. Beckels claim these cases cannot be considered controlling, because they involve states that have codified a "foreign objects exception" to their medical malpractice statute of limitations. However, these cases are informative and helpful inasmuch as the states that have codified the foreign objects exception, have basically codified the former case law rule. *See Rockefeller v. Moront*, 81 N.Y.2d 560, 601 N.Y.S.2d 86, 89, 618 N.E.2d 119, 122 (1993).

3. The "vas deferens" is the excretory sperm duct of a testicle.

(1987) (holding that "the claim of negligence is based solely upon the allegation that the wrong method and material were used in suturing the surgical wound, which is clearly insufficient to bring the action within the ambit of the foreign object exception."); *Lombardi v. DeLuca,* 130 A.D.2d 632, 515 N.Y.S.2d 811, 812 (1987) (stating that suture material intentionally left in the body does not constitute a foreign object); *Burris v. Ikard,* 798 S.W.2d 246, 248 (Tenn.Ct.App. 1990) (holding that felt "pledgets" placed in a patient's body to support sutures used in the closure of the patient's lung were not foreign objects so as to toll the statute of limitations because they were purposely placed there with the intention that they remain permanently).

[¶ 18.] In a case very similar to the present one, a patient sued because one of her kidneys was rendered inoperable when a hemoclip was inadvertently placed over her ureter. *Vinciguerra v. Jameson,* 208 A.D.2d 1136, 617 N.Y.S.2d 942, 943 (1994). In *Vinciguerra,* the court held the patient's claim was barred by the statute of limitations because the hemoclips were not foreign objects, but were merely fixation devices, which would not serve to toll the statute of limitations. *Id.* 617 N.Y.S.2d at 944.

[¶ 19.] We find the above cases persuasive in defining what constitutes a "foreign object" so as to create a duty to disclose its presence. In *Alberts,* we reversed a grant of summary judgment because there were issues of fact to resolve as to whether the pin was intended to remain in the patient's knee and whether there was a duty to disclose. We hold that because the hemoclip was intended to remain in Marjorie permanently, it was not a "foreign object" for the purpose of tolling the statute of limitations and, thus, Dr. Gerber was under no duty to inform Marjorie that it was placed in her body.[4]

[¶ 20.] Beckels also attempt to create an issue of material fact by focusing on our holding in *Alberts,* where it was stated that

failure to remove the pin when it was reasonably and medically necessary to do so constituted the requisite negligence for application of the continuing tort theory. 299 N.W.2d at 456. Beckels point to Dr. Gerber's deposition, where the following took place:

Q: But you understand that you agree that if you would have known that this clip was either put in by you or the other—the assistant over the ureter it would have been taken out, you would have intended to take it out, right?

A (Dr. Gerber): Correct.

Despite Beckels' contentions, this colloquy does not create an issue of fact so as to avoid summary judgment. Dr. Gerber stated in his affidavit that the hemoclips were intended to remain permanently in Marjorie's body. All his depositional testimony states is that, had he known at the time the clip was put in her body it was done incorrectly, he would have removed it, presumably to replace it correctly.

[¶ 21.] There is no question that the clips were intentionally placed in Marjorie with the intention that they remain there permanently. In *Alberts,* the failure to remove the pin was the negligence complained of. Here, the negligent act occurred when the hemoclip was placed over Marjorie's ureter. The distinction between the two cases is perhaps a subtle one, but it is one that is necessary to be true to the legislative intent behind SDCL 15-2-14.1. Our legislature has adopted an occurrence rule for our medical malpractice statute of limitations. *See Schoenrock,* 419 N.W.2d at 199. We have recognized a few narrow exceptions to this rule, but we cannot expand the continuing tort exception to encompass this case lest we abrogate the intent of the legislature and, in essence, adopt a discovery rule.

[¶ 22.] There are no issues of material fact that exist in this case. The only question involves applying the law of our continuing tort exception for medical malpractice cases. We hold the trial court correctly applied the law and we affirm.

---

4. The testimony also appears uncontradicted that the general practice in the community was not to disclose the use of hemoclips, just as there was no duty to disclose the use of a particular type of suture material. Therefore, the duty to disclose depends upon the "foreign object" determination.

[¶ 23.] **3. Whether SDCL 15-2-14.1 is unconstitutional as violative of the open courts provision of the South Dakota Constitution.**

[¶ 24.] This issue was not decided by the trial court because Beckels failed to give proper notice to the attorney general as required by SDCL 15-6-24(c). Because the trial court did not rule on this issue, we decline to consider it. *See Carr v. Core Indus.*, 392 N.W.2d 829, 830 (S.D.1986) (holding that constitutional issues not presented to the trial court are not properly before us); *see also Mash v. Cutler*, 488 N.W.2d 642, 648 (S.D.1992) (holding that we will not address issues raised for the first time on appeal).

[¶ 25.] Affirmed.

[¶ 26.] SABERS, ADMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

