2000 SD 91

**Jodee L. LIFFENGREN, Plaintiff and Appellant,**

v.

**Jeffrey L. BENDT, M.D., Defendant and Appellee.**

No. 21312.

Supreme Court of South Dakota.

Considered on Briefs May 30, 2000.

Decided July 12, 2000.

Raymond R. DeGeest, Rapid City, South Dakota, Attorney for plaintiff and appellant.

Daniel F. Duffy of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, Attorneys for defendant and appellee.

GILBERTSON, Justice.

[¶ 1.] Plaintiff Jodee L. Liffengren (Liffengren) appeals the circuit court's summary judgment to Defendant Jeffrey L. Bendt, M.D. ( Bendt) on the basis of the running of the statute of limitation pursuant to SDCL 15–2–14.1. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On September 28, 1994, in Rapid City, South Dakota, Liffengren underwent a laparoscopy [1] by Bendt, a board-certified obstetrician and gynecologist for the removal of a cyst on her left fallopian tube. Liffengren had a history of multiple ovarian cysts, which had required other surgical procedures, all performed by Bendt at his clinic. After the laparoscopy, Liffengren began experiencing persistent pain in her right lower abdomen. Bendt admitted her to Rapid City Regional Hospital on October 7, 1994 when she began experiencing "sudden, severe, and sharp pain" in her abdomen. Bendt consulted Dr. A.R. Yamada, a physician specializing in urology, concerning the treatment of Liffengren.

[¶ 3.] Bendt performed complete blood work tests on Liffengren, as well as an IVP test, which involves the use of dye to determine if there is a leak in the bladder or ureter.[2] The IVP test confirmed that Liffengren had a small pinhole puncture in her right ureter, which apparently allowed a small amount of urine to leak into her peritoneal cavity.[3] Yamada made the decision to place a stent, or small straw, in Liffengren's ureter to heal the small pinhole. This procedure relieved her pain and she was discharged from the hospital on October 10, 1994. Liffengren's discharge summary was completed by Yamada.

[¶ 4.] On October 17, 1994, Liffengren went to Bendt's clinic for the purpose of receiving a Depo Provera birth control shot. Bendt did not personally administer the shot to Liffengren. She had no other contact with Bendt or his office after October 17, 1994. Liffengren returned to Yamada's office on November 11, 1994, for the removal of the stent, and continued to see him until January 19, 1995. Liffengren obtained the services of another gynecologist, Dr. Randell Bauman, in January of 1995.

[¶ 5.] On October 28, 1996, Liffengren served Bendt with a summons and complaint concerning her condition resulting from the laparoscopy, alleging medical malpractice. On November 7, 1996, Bendt moved for summary judgment on the basis that the two-year statute of limitation in SDCL 15-2-14.1 expired. Liffengren contested the motion, arguing the continuing treatment exception tolls the two-year statute of limitation and claiming it was not until January of 1995 that she retained the services of Bauman to replace Bendt. The circuit court ruled on January 28, 1998 that there was a genuine issue of material fact as to the start of the running of the statute of limitation.

[¶ 6.] On September 16, 1999, Bendt renewed his motion for summary judgment on the basis there was no genuine issue of material fact as to the expiration of the statute of limitation, based on this Court's "continuing treatment" decisions of *Bruske v. Hille*, 1997 SD 108, 567 N.W.2d 872, and *Beckel v. Gerber*, 1998 SD 48, 578 N.W.2d 574.[4] The circuit court agreed.

[¶ 7.] Liffengren now appeals, raising the following issue for our consideration:

Whether the circuit court erred in granting summary judgment to Bendt.

1. Laparoscopic surgery involves the use of instruments inserted through small incisions in the abdomen. This procedure does not involve opening the abdomen to remove the cystic mass.

2. The ureter is the fibromuscular tube which conveys urine from the kidney to the bladder. Dorland's Medical Dictionary 1676 (25th ed.1974).

3. The peritoneum is the membrane lining the abdominal and pelvic walls. It forms a cov-
ering for many organs, including the colon, upper end of the rectum, uterus, and ovaries. The peritoneum also partially covers the posterior wall of the bladder. Dorland's Medical Dictionary 1168 (25th ed.1974).

4. Dr. Bendt filed his initial motion for summary judgment on November 7, 1996. It was denied by the circuit court on January 28, 1997. Subsequently, we handed down two continuing treatment cases, *Bruske* on August 20, 1997, and *Beckel* on May 20, 1998.

## STANDARD OF REVIEW

[¶ 8.] Our standard of review for a circuit court's grant of a motion for summary judgment was recently restated in *Hart v. Miller*:

> Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." SDCL 15–6–56(c). We will affirm only when there are no genuine issues of material fact and the legal questions have been correctly decided. *Bego v. Gordon*, 407 N.W.2d 801, 804 (S.D.1987). All reasonable inferences drawn from the facts must be viewed in favor of the non-moving party. *Morgan v. Baldwin*, 450 N.W.2d 783, 785 (S.D.1990). The burden is on the moving party to clearly show an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law. *Wilson v. Great N. Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

2000 SD 53, ¶ 10, 609 N.W.2d 138, 142 (quoting *Mattson v. Rachetto*, 1999 SD 51, ¶ 8, 591 N.W.2d 814, 817 (quoting *Estate of Shuck v. Perkins County*, 1998 SD 32, ¶ 6, 577 N.W.2d 584, 586)). Statute of limitation questions are generally to be resolved by a jury. *Beckel v. Gerber*, 1998 SD 48, ¶ 5, 578 N.W.2d 574, 576 (citing *Schoenrock v. Tappe*, 419 N.W.2d 197, 200 (S.D. 1988)). "Summary judgment is proper on statute of limitation[ ] issues only when application of the law is in question, and not when there are remaining issues of material fact." *Id.* (citing *Kurylas, Inc. v. Bradsky*, 452 N.W.2d 111, 113 (S.D.1990)).

## ANALYSIS AND DECISION

[¶ 9.] **Whether the circuit court erred in granting summary judgment to Bendt.**

[¶ 10.] Liffengren claims the alleged malpractice occurred on September 28, 1994, the date Bendt performed the laparoscopy and purportedly punctured her ureter. Thus, pursuant to SDCL 15–2–14.1, the statute of limitation would have run by September 28, 1996:

> An action against a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts for malpractice, error, mistake or failing to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice, error; mistake or failure to cure shall have occurred[.]

This statute of limitation is an "occurrence rule," and it begins to run when the alleged negligent act occurs, rather than when it is discovered. *Beckel*, 1998 SD 48, ¶ 9, 578 N.W.2d at 576 (citing *Schoenrock*, 419 N.W.2d at 199; *Alberts v. Giebink*, 299 N.W.2d 454, 456 (S.D.1980)). Liffengren did not serve Bendt with a summons and complaint until October 28, 1996. By this date, Liffengren's cause of action was untimely and expired under SDCL 15–2–14.1. However, Liffengren claims the continuing treatment exception tolls the statute.

[¶ 11.] Liffengren argues there is a genuine issue of material fact as to when the doctor/patient relationship with Bendt ended, thus, this issue should be decided by a jury. She claims that she continued to rely upon Bendt and upon his recommendation of Yamada's services, and that her relationship with Bendt and Yamada did not end until she obtained the services of another gynecologist in January 1995. Essentially, Liffengren is attempting to bootstrap her November, 1994 and January 1995 visits with Yamada to her prior treatment by Bendt.

[¶ 12.] Bendt responds that after Liffengren's release from the hospital on October 10, 1994, he did not treat her again for any purpose related to her laparoscopy. At most, he claims the last time Liffengren had contact with his office was for the Depo–Provera shot, which was unrelated to her laparoscopy. Thus, at the latest,

the doctor/patient relationship between Bendt and Liffengren ended on October 17, 1994. For this reason, Bendt argues since Liffengren served her summons and complaint on October 28, 1996, the statute of limitation for filing medical malpractice claims had already run. We agree with Bendt.

[¶ 13.] This Court has recognized the "continuing treatment" rule or exception to toll the running of the statute of limitation in medical malpractice actions. *See id.* ¶ 10 (citing *Wells v. Billars*, 391 N.W.2d 668, 671 (S.D.1986); *Bruske*, 1997 SD 108, ¶ 15, 567 N.W.2d at 877; *Bosse v. Quam*, 537 N.W.2d 8, 10 (S.D.1995)). In *Bruske*, we stated:

> In the area of medical malpractice ... this court has carved an exception to the statute of limitation[ ]. This exception prevents the statute of limitation's clock from ticking when the alleged harm is the result of a continuing tort. *See* [*Wells*, 391 N.W.2d 668]; [*Alberts*, 299 N.W.2d 454]. In *Wells*, the court tolled the statute of limitation[ ] for torts arising out of a physician's "continuing treatment" until the doctor-patient relationship ended. [*Wells*, 391 N.W.2d at 673.] The rationale behind this doctrine was to prevent the refusal to seek or administer health care due to pending litigation when treatment may be desperately needed. [*Id.* at 672.]

1997 SD 108, ¶ 15, 567 N.W.2d at 877 (citing *Bosse*, 537 N.W.2d at 10). There must be an "on-going, continuous, developing and dependent relationship" for the continuing treatment rule to toll the statute of limitation. *Beckel*, 1998 SD 48, ¶ 10, 578 N.W.2d at 576 (citing *Bruske*, 1997 SD 108, ¶ 15, 567 N.W.2d at 877 (citing *Schoenrock*, 419 N.W.2d at 201; *Sander v. Geib, Elston, Frost Prof'l Ass'n*, 506 N.W.2d 107, 114 (S.D.1993))).

[¶ 14.] For the purpose of her claim of alleged malpractice stemming from the laparoscopy, there is no question the doctor/patient relationship between Bendt and Liffengren ended on October 10, 1994.

Continuous treatment for purposes of the exception must consist of treatment for the same or related illnesses or injuries. *Borgia v. City of New York*, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777, 781 (1962). The final single procedure performed by Bendt's medical clinic was a birth control shot; not any sort of therapy concerning her laparoscopy. Consequently, this one visit "may not serve as a basis for applying the continuous treatment exception because [Liffengren] could have interrupted the services and switched physicians at any time without jeopardizing her health." *See Massie v. Crawford*, 78 N.Y.2d 516, 577 N.Y.S.2d 223, 583 N.E.2d 935, 938 (1991) (concluding that a physician's insertion of an IUD was for routine gynecological examinations and not therapy to correct her medical condition, thus the continuous treatment exception did not apply).

[¶ 15.] Even if Bendt had continued to medically treat Liffengren after her surgery, her cause of action would still turn on the nature of the condition for which she was being treated, not a general patient-physician relationship. Continuous treatment is not held to be synonymous with the continuing patient-physician relationship. *Atha v. Polsky*, 667 S.W.2d 307, 310 n. 3 (Tex.Ct.App. 1984). In affirming summary judgment in favor of the defendant doctor, the court in *Atha* stated:

> Continuous treatment ... embodies the treatment for that *condition* out of which the negligence is alleged to have arisen, *continuing after* the negligent act *rather than the continuation of the general patient-physician relationship.* While the termination of the treatment can be the time of accrual where there is no affirmative act of negligence and the injury results from the course of treatment, the general rule is that the statutory period is not postponed when there is a specific act of negligence even though the physician continues to treat

the patient as long as the condition is not aggravated by it.

*Id.* (emphasis in original). "A continuing relationship is 'not sporadic but developing and involves a continuity of the professional services from which the alleged malpractice stems.'" *Bruske,* 1997 SD 108, ¶ 15, 567 N.W.2d at 877 (citing *Schoenrock,* 419 N.W.2d at 201). The continuing treatment doctrine should be applied only "when the professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship." *Id.* at ¶ 15, 567 N.W.2d at 877–78. Continuous treatment involves more than a physician-patient relationship. *See Massie,* 577 N.Y.S.2d 223, 583 N.E.2d at 937 (citing *McDermott v. Torre,* 56 N.Y.2d 399, 452 N.Y.S.2d 351, 437 N.E.2d 1108 (1982); *Borgia,* 237 N.Y.S.2d 319, 187 N.E.2d at 779). There must be ongoing treatment of a medical condition. *Id.*

[¶ 16.] This action does not come within the continuing treatment exception. Bendt performed the single procedure of the laparoscopy. When Liffengren began to feel pain and discomfort after the procedure, she went back to Bendt who immediately recognized the problem and consulted Yamada, a urologist. After Yamada placed the stent in Liffengren's ureter, her condition was corrected, and she was discharged from the hospital on October 10, 1994. She did not see Bendt again after her discharge, thus no doctor-patient relationship continued because she never returned to him for further treatment of this condition. Bendt indicated in his affidavit that the October 7–10 hospitalization was "the last time [he] personally provided medical care to [Liffengren]." Further, Bendt stated "[t]he date of October 17, 1994, [was] the last time that anyone connected with my medical practice provided any care and treatment to [Liffengren]."

[¶ 17.] In the alternative, Liffengren insists that "[her] relationship with Bendt in conjunction with his consultation of Dr. Andrew Yamada was an ongoing, continuous, developing and dependent relationship which existed in relation to the damage to [her] ureter until January 19, 1995." We do not agree. While Yamada may have continued to treat her after release from the hospital, that "continued treatment" cannot toll the statute of limitation with respect to her malpractice claim against Bendt. The purpose of the continuous treatment exception for purposes of tolling the statute of limitation is that the alleged continuous treatment be provided by the *same* physician or clinic. *See Florio v. Cook,* 65 A.D.2d 548, 408 N.Y.S.2d 949, 951 (N.Y.App.Div.1978); *Camire v. United States,* 535 F.2d 749, 750 (2nd Cir.1976) (holding that the continuing treatment doctrine requires treatment to be rendered by the same physician, his associate or his clinic; it does not apply where treatment involves separate physicians). "The physician [must] continue[ ] to treat the patient for the particular disease or condition created by the original act of [alleged] negligence." *Conner v. St. Luke's Hospital, Inc.,* 996 F.2d 651, 653–54 (4th Cir.1993). In order for the patient to "[t]o take advantage of the 'continuing course of treatment' doctrine, *plaintiff must 'show the existence of a continuing relationship with [her] physician,* and . . . that [she] received subsequent treatment *from that physician.'"* *Id.* at 654 (citing *Stallings v. Gunter,* 99 N.C.App. 710, 394 S.E.2d 212, 216 (quoting Dana D. Peck, Comment, *The Continuous Treatment Doctrine: A Toll in the Statute of Limitations for Medical Malpractice in New York,* 49 Alb.L.Rev. 64, 72 (1984))). (emphasis added).

[¶ 18.] In *Florio,* the plaintiff brought a medical malpractice action against a physician after a laminectomy for removal of a spinal cord tumor. The plaintiff argued that the defendant's referral to her own physician for further observation and treatment after the surgery invoked the continuous treatment exception, thus preventing the running of the statute of limi-

tation. The court rejected the plaintiff's argument, concluding that:

[n]o material question of fact is raised by this contention. In open court on oral argument, [plaintiff] conceded that [defendant] could have done no more—if he did—than request the family physician to give such care and treatment as was warranted by the circumstances and that there was no master-servant or principal-agent relationship between the two physicians.

*Florio,* 408 N.Y.S.2d at 950.

[¶ 19.] Similarly, in this case, there is no evidence there was a master-servant relationship or principal-agent relationship between Bendt and Yamada. Liffengren stated in her affidavit that after Yamada placed the stent in her ureter, "[she] was then discharged from the hospital on October 10, 1994 and returned to Yamada's office on November 11, 1994, for the removal of the st[e]nt. [She] then continued [to see] Yamada on a regular basis for checkups until [her] last appointment with him on January 19, 1995." Thus, it is apparent the only contact Liffengren had with a physician for follow-up care after Yamada's procedure, was with Yamada. The record is uncontroverted that once Liffengren left the hospital, Bendt had nothing more to do with her treatment, either by consultation with Yamada or otherwise. *See Langner v. Simpson,* 533 N.W.2d 511, 521 (Iowa 1995) (holding that the continuing treatment doctrine could not toll the statute of limitation for purposes of patient's medical malpractice claims where the patient was discharged from the hospital and began receiving care from another doctor, and Simpson had no further contact with her).

[¶ 20.] No genuine issue of material fact exists concerning the expiration of the statute of limitation against Bendt. The continuing treatment doctrine cannot operate to extend the statute of limitation period beyond two years from October 10, 1994. As is evident from the record, Bendt's treatment and care of Liffengren ended when she was discharged from the hospital, and began seeing Yamada for follow-up care after his surgery. Bendt did not treat Liffengren for the injury associated with her laparoscopy after October 10, 1994. There is no evidence that Bendt monitored or relied upon Yamada's treatment of Liffengren after Yamada's discharge of her. The evidence in this case is that Liffengren relied upon Yamada, not Bendt, after her release from the hospital. She was discharged pursuant to Yamada's order. As such, the circuit court's grant of summary judgment to Bendt is affirmed.

[¶ 21.] MILLER, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, concur.