2000 SD 117

**John SHERMAN and Joann Sherman, husband and wife, jointly and severally, Plaintiffs and Appellants,**

**v.**

**Geralyn M. SHERMAN, Defendant and Appellee.**

**No. 21190.**

Supreme Court of South Dakota.

Considered on Briefs May 30, 2000.

Decided Aug. 23, 2000.

John E. Burke, Sioux Falls, Attorney for plaintiffs and appellants.

Patrick T. Pardy of Mumford, Protsch and Pardy, Howard, Attorneys for defendant and appellee.

MILLER, Chief Justice.

[¶ 1.] In this decision, we affirm the trial court and hold that plaintiffs' action is barred by the 4-year statute of limitations governing the sale of goods.

## FACTS

[¶ 2.] In 1980, Geralyn Sherman and her then-husband Gary Sherman purchased a feed store in Salem, South Dakota (Salem store) on a contract for deed from a third party. A warranty deed conveying the property to them was filed in 1990.

[¶ 3.] Contemporaneous with Gary and Geralyn operating the Salem store, Gary's parents, John and Joann Sherman, owned and operated a feed store in Howard, South Dakota (Howard store). In order to obtain a better wholesale price, John and Joann purchased feed for both the Howard store and the Salem store. They then sold a portion of the feed on credit to Gary and Geralyn for resale in the Salem store. No terms of this arrangement were reduced to writing. By 1993 Gary and Geralyn owed John and Joann approximately $146,000 for feed purchased over the years.

[¶ 4.] In October 1993 Gary and Geralyn divorced. As part of the divorce they agreed to sell the Salem store to John and Joann. At that time, because the feed debt exceeded the value of the business, they agreed that the sale price of the store was to be applied as a credit against the feed debt, with the remaining debt to be equally divided between Gary and Geralyn. The divorce stipulation specifically provided:

13. As regards the business of the parties known as Sherman Feed Store, the parties agree as follows:

(1). They will sell this business according to the terms of the Purchase Agreement attached hereto and incorporated herein; and,

(2). [Geralyn] will assume one-half of the debt ... and [Gary] will assume the remaining portion.

[¶ 5.] The Purchase Agreement entered into between the parties contained the following provision regarding the feed debt:

PAYMENT OF CONSIDERATION: It is agreed and acknowledged by and between the parties that [Gary and Geralyn] are presently indebted to [John and Joann] and that [John and Joann] need make no cash payments in connection with this transfer, however, the obligation of [Gary and Geralyn] to [John and Joann] will be debited in the full amount of this sale and [John and Joann] agree to furnish to [Gary and Geralyn] a document acknowledging receipt of the full amount of this sale for credit upon their obligation.

[¶ 6.] At the time the divorce stipulation and the purchase agreement were entered into, the parties did not know the exact value of the business, nor how much Gary and Geralyn would each owe John and Joann. A subsequent "Supplemental Stipulation" signed by Gary and Geralyn provided those details. According to that document, after the value of the business was credited against the amount owed, Geralyn's share of the debt remaining was $42,306.67. Apparently, she made no payments on this debt.

[¶ 7.] On November 11, 1998, John and Joann filed suit against Geralyn, claiming that they had not received any payment on the debt. Geralyn responded, raising a statute of limitations defense and arguing that the complaint failed to state a cause of action upon which relief could be granted. Both parties filed motions for summary judgment. After a hearing the trial court granted Geralyn's motion and denied John and Joann's motion. They appeal; we affirm.

## STANDARD OF REVIEW

[¶ 8.] We make a de novo review of summary judgment on a statute of limitations issue when there are no disputes regarding genuine issues of material fact and only the application of the law is in question. *Kurylas, Inc., v. Bradsky,* 452 N.W.2d 111, 113 (S.D.1990). *See also, Peterson v. Hohm,* 2000 SD 27, ¶ 7, 607 N.W.2d 8, 10; *Wissink v. Van De Stroet,* 1999 SD 92, ¶ 9, 598 N.W.2d 213, 215; *Beckel v. Gerber,* 1998 SD 48, ¶ 5, 578 N.W.2d 574, 576.

## DECISION

[¶ 9.] The parties had a binding contract. Under SDCL 57A–2–204, a contract may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. Furthermore, an agreement sufficient to constitute a contract may be found even though the moment of its making is undetermined. If the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy, a contract will not fail for indefiniteness even though one or more terms are left open. *Id.*

■ [¶ 10.] John and Joann claim the divorce documents provide evidence that Geralyn owes them $42,306.67. They characterize the transaction as one other than for the sale of goods and contend the governing statute is SDCL 15–2–13,[1] which allows a 6–year statute of limitations. They argue in their brief that "[w]hen goods are sold with other items, as here, the predominant purpose of the contract is what should be examined.... [T]he goods involved in the transaction were only 60 percent of the value of the accounts receivable to which in the transaction must be added the furniture and the fixtures of the business and the real estate."

[¶ 11.] Geralyn, who seemingly does not dispute the fact that she did not make any payments on her debt, relies upon SDCL 57A–2–725 (Uniform Commercial Code), which provides a 4–year statute of limitations for transactions involving the sale of goods.[2] We agree.

■ [¶ 12.] In order for a transaction to be governed by Article Two of the UCC, the sale must be for a sale of goods. SDCL 57A–2–102. SDCL 57A–2–105 defines "goods" as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 57A–8) and things in action." "Goods" includes all personal chattels other than things in action and money. *City of Gregory v. Clausen*, 78 S.D. 208, 212, 99 N.W.2d 883, 885 (1959).

[¶ 13.] We have held that farm machinery constitutes goods, *Olson v. Spitzer*, 257 N.W.2d 459 (S.D.1977), as do hogs, *Lee v. Cohrt*, 57 S.D. 387, 232 N.W. 900 (1930). Similarly, mink feed has been deemed subject to Article Two, *Primrose v. Russell*, 23 Conn.Supp. 91, 176 A.2d 885 (1961), as has grain, *Urbana Farmers Union Elevator Co. v. Schock*, 351 N.W.2d 88 (N.D. 1984), corn, *Farmers Elevator Co. of Elk Point v. Lyle*, 90 S.D. 86, 238 N.W.2d 290 (1976); *Laird v. Scribner Coop, Inc.*, 237 Neb. 532, 466 N.W.2d 798 (1991), hay, *Azevedo v. Minister*, 86 Nev. 576, 471 P.2d 661 (1970), and seeds, *Stumler v. Ferry–Morse Seed Co.*, 644 F.2d 667 (7th Cir. 1981) (tomato seeds); *Mallory v. Conida Warehouses, Inc.*, 134 Mich.App. 28, 350 N.W.2d 825 (1984) (kidney bean seeds).

[¶ 14.] Despite John and Joann's arguments to the contrary, the sale of feed in this case is clearly considered "goods" under Article Two. It was movable at the time of identification, and it was not money or a thing in action. John and Joann contend that 60 percent of the value of the accounts receivable they purchased when they bought the Salem store was comprised of feed sales, and the remaining assets were comprised of other accounts

---

1.  SDCL 15–2–13 provides in pertinent part:
    Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within six years after the cause of action shall have accrued:
    (1) An action upon a contract, obligation, or liability, express or implied[.]

2.  SDCL 57A–2–725 provides in part:
    (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.
    (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.

receivable, furniture, fixtures and real estate. Yet even if true, this explanation does not remove the $146,000 feed debt, which antedated and was unrelated to the sale of the business, from UCC coverage. In short, other than providing evidence that Geralyn agreed to repay her portion of the feed debt, the terms of the purchase agreement are totally irrelevant to the $42,306.67 claim now being asserted. The undisputed evidence in the record shows that the debt originated from the sale of feed, thus it was subject to the 4–year statute of limitations for the sale of goods. SDCL 57A–2–725.

[¶ 15.] The statute of limitations began to run when the contract for the sale of feed was breached. In the absence of a written agreement regarding payment terms, SDCL 57A–2–310(a) provides that "[p]ayment is due at the time and place at which the buyer is to receive the goods even though the place of shipment is the place of delivery." It is undisputed that the last sale of feed from John and Joann to Gary and Geralyn took place in August 1993. The cause of action then began to accrue, and it ended four years later in August 1997.

[¶ 16.] This action was filed on November 11, 1998, more than a year after the statute of limitations had expired. There being no genuine issues of material fact, the trial court's grant of Geralyn's motion for summary judgment was proper. Accordingly, it is affirmed.[3]

[¶ 17.] AMUNDSON and KONENKAMP, Justices, concur.

[¶ 18.] SABERS and GILBERTSON, Justices, dissent.

SABERS, Justice (dissenting).

[¶ 19.] The majority opinion claims this action is governed by Article 2 of the UCC, which imposes a four-year statute of limitation in this case. It concludes that the statute of limitation began to accrue in August of 1993 and expired in August of 1997. For the following reasons, I disagree.

[¶ 20.] Geralyn and Gary Sherman purchased the Sherman Feed Store in 1980. Gary's parents bought feed for the store, but Geralyn and Gary were responsible for repaying them. When the parties divorced in 1993, the property distribution divided the debt owed to Gary's parents between Geralyn and Gary. More specifically, Geralyn agreed to pay $42,306.67 of the debt to Gary's parents. This property distribution is evidenced by two stipulations, dated October 18, 1993 and December 16, 1993, thereby creating a separate promise from the underlying transaction. Therefore, while the underlying transaction may have been a sale of goods, it was merged into a property distribution and, pursuant to SDCL 15–2–13, Gary's parents, in the worst case scenario, had until October 18, 1999 to commence this action. Because they sued on November 11, 1998, their action was timely and the trial court erred in granting summary judgment to Geralyn.

[¶ 21.] This court has previously been presented with this issue. In *O'Neill v. Steppat*, 270 N.W.2d 375, 375–76 (S.D. 1978), the parties entered into a purchase agreement for the sale of a business on August 31, 1970. The buyers executed and delivered a promissory note to the sellers on October 15, 1970. On December 29, 1975, the sellers sued to recover the amount of the note, which was due on September 1, 1971. The buyers argued that because the underlying contract was one for a sale of goods, the four-year statute of limitation barred the action. The trial court agreed. In reversing, this court stated:

Sellers have sought to recover on the note, not on the contract. That the note might have been given in payment for a contract for sale is not relevant in this

---

3. Because of our disposition of this issue, we need not address Geralyn's argument regarding John and Joann's failure to state a claim upon which relief can be granted.

action.... Buyers, by signing a negotiable note, made a separate promise.... This separate promise gives rise to a separate remedy on the note[.]

*Id.* at 376 (internal citations omitted). We determined that a six-year statute of limitation applied per SDCL 57–8–1:

Remedies for breach of any obligation or promise collateral or ancillary to a contract for sale are not impaired by the provisions of chapters 57–2 to 57–8, [UCC Article 2] inclusive.

*Id.* at 377. Because the note was an "obligation or promise collateral or ancillary to" the contract for sale, we held that Article 2 did not apply.

[¶ 22.] Here, Gary's parents are seeking to enforce the promises Geralyn made in the stipulations as part of her divorce. They are not suing on the underlying transaction. SDCL 57A–2–701 provides: "Remedies for breach of any obligation or promise collateral or ancillary to a contract for sale are not impaired by the provisions of this chapter." Obviously, the stipulations here were collateral and/or ancillary to the underlying transactions. Therefore, the action is not barred by Article 2 of the UCC.

[¶ 23.] Additionally, this court has held:

[I]n South Dakota, when one of two statutes of limitations may be applicable, such application should always be tested by the nature of the allegations in the complaint, and if there is any doubt as to which statute applies, such doubt should be resolved in favor of the longer limitation period.

*Morgan v. Baldwin,* 450 N.W.2d 783, 786 (S.D.1990). Here, the complaint alleges that Geralyn is indebted to Gary's parents for $42,306.67 based on the stipulations. The complaint does not allege that the debt arises out of a sale of goods, instead, it specifically alleges that the debt arises from the stipulations. In following what we stated in *O'Neill* and *Morgan,* the longer statute of limitation of six years applies.

[¶ 24.] Therefore, I vote to reverse and remand the trial court's grant of summary judgment to Geralyn.

[¶ 25.] GILBERTSON, Justice, joins this dissent.