COURT OF APPEALS OF VIRGINIA


Present:    Judges Benton, Humphreys and Senior Judge Overton


BERNICE CANTER

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0507-05-3                          PER CURIAM
                                                     DECEMBER 13, 2005
CITY OF BRISTOL DEPARTMENT OF
 SOCIAL SERVICES


                  FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
                        Charles H. Smith, Jr., Judge Designate

             (Kimberly C. Haugh, on brief), for appellant.  Appellant submitting
             on brief.

             (G. Walter Bressler; E. Gay Leonard, Guardian *ad litem* for the
             minor children; Bressler, Curcio & Stout, PC, on brief), for appellee.
             Appellee and Guardian *ad litem* submitting on brief.


        Bernice Canter contends the trial court erred in terminating her parental rights to two minor

children and in finding that such termination was in the best interests of the children.[1]  We affirm

the trial court's decision.

                                        Background

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Although the trial court's final order and the parties refer to Code § 16.1-283(C)(ii),
§ 16.1-283 does not contain a subsection (ii) under subsection (C).  From the content of the
parties' argument and the trial court's order, we assume this was an inadvertent error and the trial
court and the parties meant to refer to Code § 16.1-283(C)(2).  Accordingly, we remand this case
to the trial court, for the sole purpose of correcting this clerical error so that the final order
reflects that Canter's parental rights were terminated under Code § 16.1-283(C)(2), not Code
§ 16.1-283(C)(ii).  In addition, for purposes of this opinion, we will refer to Code
§ 16.1-283(C)(2), not Code § 16.1-283(C)(ii).

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence proved that on February 7, 1999, the City of Bristol Department of Social Services received a complaint that Canter threw her older daughter, who was two and one-half years old at that time, onto a concrete floor, bruising her head. The complaint indicated Canter and her friends were intoxicated at the time. During the Department's investigation of that complaint, Canter said she did not remember the incident because she temporarily blacked out. Canter did not appeal the Department's finding of physical abuse and inadequate supervision. After law enforcement investigated, Canter was charged with and pled guilty to misdemeanor child abuse in the juvenile and domestic relations district court. The court issued a child protective order and took the criminal charge under advisement upon conditions that Canter remain of good behavior, complete parenting and anger management classes, and commit no further acts of child abuse for a period of twelve months. In March 2000, the court dismissed the charge and the child protective order because appellant had completed the required classes.

The Department continued to provide ongoing services to Canter. Margie Beatrice Wilson, a child protective services worker, began working with Canter in March 2000, while the children were living with Canter. Wilson received a complaint from Canter's mother that the older girl had burns on her hand consistent with cigarette burns. When Wilson investigated, Canter blamed the burns on her mother's boyfriend. Wilson determined the complaint was unfounded after a physician could not determine whether the marks were cigarette burns. Wilson later met with Canter on numerous occasions to discuss complaints regarding Canter neglecting the older girl, ingesting drugs, having numerous persons in her home, and giving the girl cold showers as punishment. Canter denied that those events occurred.

On May 31, 2000, when the older girl was three, Wilson investigated a complaint that she had a large bruise on the back of her leg and photographed the bruise. Canter said that she had

allowed the girls to spend the night with a friend and that the friend caused the bruise. That night, Wilson went to an emergency room after receiving a call. The older girl was lethargic, unresponsive, and did not speak. Her eyes were dilated, and she could not move her arms or walk. Canter said that she had allowed the girl to spend the night with her friend and that her friend must have given the girl "something."

Both children were removed from Canter's home under an emergency removal order and placed in foster care. The district court upheld the emergency removal order and granted custody of the girls to the Department. Canter admitted that she had given the older girl cold showers to calm her, that she had beaten her with a belt on a daily basis to "make her be good," and that she had given the girl Elavil pills to calm her.

Canter pled guilty to one count of felony abuse and neglect under Code § 18.2-371.1(A) and one count of felony cruelty and injury to children under Code § 40.1-103 on June 12, 2000. The circuit court sentenced Canter to two years in the penitentiary on each count and suspended one year and five months of the first sentence and suspended the entire second two-year sentence, imposing certain conditions. The Department issued a "Founded-Level 1" disposition against Canter for physical abuse, noting that Canter had admitted to physical, mental, and medical abuse and that Canter had been found guilty of the above-referenced felony charges. The Department placed her two minor children in various foster homes. When released from jail, Canter visited the children on December 8, 2000 and January 19, 2001. However, in February 2001, Canter admitted that she had been using alcohol, marijuana, Ecstasy, and Lortab. The circuit court revoked her sentence for violating her probation. She was incarcerated until March 17, 2001.

While Canter was in jail, the district court approved placement of the girls with relatives in North Carolina in separate households, where they still had close contact with each other.

Prior to that time, the children had been together in three foster care placements. When Canter visited with the children after she was released from jail, they had adverse reactions to her. When Canter's relatives found it difficult to make the children available for visitation with Canter, the children were returned to Virginia for foster care placement. The girls eventually were placed in two different foster care homes and have maintained close, regular contact.

In July 2001, the Department filed a new foster care plan with the goal of returning the children to Canter's home. The district court approved that plan, upon condition that Canter maintain appropriate housing, obtain employment and means of support, participate in parenting classes and exhibit appropriate parenting, and participate in counseling for anger and substance abuse issues.

The evidence proved Canter did not maintain stable housing. Although Canter completed parenting classes and continued with a women's treatment group, the evidence proved she failed to improve her ability to parent the children. Canter obtained employment in August 2001 and worked through December 2001, but did not again obtain employment until April 2002, after the termination petitions were filed.

The Department changed its goal of returning the children to Canter to the goal of adoption. It then filed new foster care plans and petitions to terminate Canter's parental rights. The district court granted those petitions, giving custody of the children to the Department and granting permission to place the children for adoption.

On Canter's appeal to the circuit court, the older girl's foster parent testified that the child initially kicked, stomped, hit, and bit. She refused to obey, and she had very little verbal ability. The girl slowly progressed, but, after each visit with Canter, she reverted to disruptive and aggressive behaviors and was visibly upset. After the Department stopped the visitation, the

girl's behavior improved. The foster parent testified that the girl's verbal skills have improved and that she rarely needed to use sign language.

The younger girl's foster parent testified that the girl was very well adjusted in the home, except after visitation with Canter when she became upset. Once visitations with Canter stopped, the child's behavior improved. The child is in kindergarten and progressing satisfactorily at grade level.

Dr. Timothy A. Urbin, a licensed clinical psychologist, testified that the older child suffers from "very severe cognitive impairments, difficulty with thinking with the left hemisphere [of her brain] associated with verbal processing much more impaired than the right." He recommended that she be in a permanent, stable environment to maximize her functioning level. He opined that the child's exposure to Elavil probably was "a precipitating event for some significant brain damage." He opined that the general shock effects and reduced blood supply to the brain from an overdose of Elavil "could certainly produce" significant permanent damage to the brain as seen in this case. Urbin opined that the child's learning ability will be severely impaired as a result of exposure to Elavil.

Other evidence proved that most of the older girl's behavioral problems resolved in four to five months; however, her speech problems did not resolve. As a result, she began to learn sign language, which helped her communicate. The counselors and social workers recommended that the children be placed in homes that could provide permanency and consistency.

A licensed clinical psychologist testified that Canter appeared "somewhat intellectually limited and she shared . . . that she did have a long history of being in special education." Canter revealed her history of drug abuse and her own abusive childhood. She testified that Canter admitted that she committed abusive acts against the girl. She opined that Canter's limited

intellectual and psychological functioning would have prevented her from being able to meet the needs of the older child.

Canter testified that she had just moved to a new residence and had lived there for the past two months. She has two other minor children, a twenty-month boy and four-month girl, each of whom has a different father. Canter testified that she worked for three months at one job before quitting. After the petitions to terminate her parental rights were served upon her, she began another job but quit due to her pregnancy and her mother's illness. She denied abusing her children.

The trial court granted the petition to terminate Canter's residual parental rights. In its final order, the trial court made specific findings of fact and concluded that the Department established by clear and convincing evidence that termination of Canter's parental rights was appropriate under Code § 16.1-283(E)(iii) and § 16.1-283(C)(2) and that termination was in the best interests of both children.

<u>Analysis</u>

Canter contends the trial court was precluded from terminating her parental rights under Code § 16.1-283(E)(iii) because the Department elected to pursue termination of her parental rights solely under Code § 16.1-283(C)(2). Canter argues that the burden of proof under Code § 16.1-283(C)(2) is substantially different from the burden of proof under Code § 16.1-283(E)(iii), and, therefore, due process required the Department to proceed only upon that portion of the statute elected.

Canter never made this election of remedies argument to the trial court. Accordingly, Rule 5A:18 bars our consideration of this argument on appeal. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." <u>Ohree v. Commonwealth</u>, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998).

Canter argues that the trial court erred in terminating her rights under Code

§ 16.1-283(E)(iii) and in finding that such termination was in the best interests of the children.

> "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citations omitted). Recognizing that "'[t]he

termination of [residual] parental rights is a grave, drastic and irreversible action,'" Helen W. v.

Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991)

(citation omitted), we, nevertheless, presume the trial court has "thoroughly weighed all the

evidence [and] considered the statutory requirements.'" Logan, 13 Va. App. at 128, 409 S.E.2d

at 463 (citation omitted).

Code § 16.1-283(E)(iii) provides as follows:

> The residual rights of a parent or parents of a child who is in the custody of a local board or licensed child-placing agency may be terminated by the court if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that . . . the parent has been convicted of an offense under the laws of this Commonwealth . . . that constitutes felony assault resulting in serious bodily injury or felony bodily wounding resulting in serious bodily injury or felony sexual assault, if the victim of the offense was a child of the parent or a child with whom the parent resided at the time of such offense . . . .

Canter pled guilty to felony charges under Code §§ 18.2-371.1 and 40-103. She had

earlier confessed that she beat the older girl with a belt on a daily basis, gave her cold showers to

make her behave, and gave her Elavil to calm her. The underlying factual basis for those

convictions clearly constituted felony assault resulting in serious bodily injury under Code

§ 16.1-283(E)(iii). See Brown v. Spotsylvania Dept. of Social Servs., 43 Va. App. 205, 214, 597

S.E.2d 214, 218 (2004) ("'[F]elony assault' . . . means any crime which results in serious bodily

injury to the child."). In addition, the trial court found that the Department presented clear and convincing evidence that termination of Canter's parental rights was in the best interests of the children. The voluminous evidence contained in the record, including the testimony of the numerous lay and expert witnesses and exhibits admitted into evidence, amply supports that ruling. Accordingly, we will not disturb it on appeal.

Canter's argument that the trial court erred in terminating her parental rights to the younger girl because the evidence relating to the felony assault pertained solely to the older girl is without merit. By its express language, Code § 16.1-283(E) does not limit the authority of the trial court to terminate parental rights only to children who are the direct victims of the parent's felonious assault. The express language of the statute permits the termination of parental rights of other children who would be endangered where a parent has feloniously assaulted one of his or her children. The obvious purpose of the statute is to allow the court to terminate a parent's parental rights when the parent's conduct poses a serious endangerment to a child's well-being without requiring that the court wait until the child is harmed before terminating the parent's rights.

In this instance, the trial court ruled that the Department established a *prima facie* case under the statute as to both children when it proved that Canter was convicted of felony child abuse and felony cruelty and injury to one of her children. Relevant information regarding the older child was presented at the hearing and contained in other parts of the record. The trial court found by "clear and convincing evidence . . . that the termination of [Canter's] rights in both [children] is appropriate under Va. Code § 16.1-283(E)(iii) and said termination is in the best interest of both children." Those findings are supported by credible evidence.

## Code § 16.1-283(C)(2)

Canter also argues that the trial court erred in terminating her parental rights under Code § 16.1-283(C)(2). Because we hold that the trial court's termination of Canter's parental rights under Code § 16.1-283(E)(iii) was amply supported by the record, we need not address this argument.

Code § 16.1-283 provides for the termination of residual parental rights under carefully defined circumstances. Here, the trial court concluded that the evidence warranted termination of Canter's residual parental rights to the children on alternative grounds, i.e., under subsections (E)(iii) and (C)(2) of Code § 16.1-283. Where a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, need not address the other grounds. See Boone v. C. Arthur Weaver Co., 235 Va. 157, 161, 365 S.E.2d 764, 766 (1988).

Accordingly, for the reasons set forth herein, we affirm the trial court's decision terminating Canter's residual parental rights to both children.

Affirmed.