COURT OF APPEALS OF VIRGINIA


Present:    Judges Kelsey, Petty and Senior Judge Bumgardner


BARRY JACKSON, SR.

MEMORANDUM OPINION[*]
v.        Record No. 2546-07-2                                           PER CURIAM
                                                                        APRIL 22, 2008
LANCASTER COUNTY DEPARTMENT
   OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF LANCASTER COUNTY
Harry T. Taliaferro, III, Judge

(Laurence M. Dickinson, on briefs), for appellant.

(Michael L. Donner, Sr.; Matthew R. Kite, *Guardian ad litem* for
the minor children; Hubbard Terry & Kopcsak, P.C.; Dillard and
Katona, on brief), for appellee.


        Barry Jackson, Sr. contends the evidence was insufficient to support the trial court's

decision terminating his residual parental rights to his three minor children, B.J., M.J., and I.J.

(referred to hereafter individually or collectively as "the children"), pursuant to Code

§ 16.1-283(C)(1) and 16.1-283(C)(2).[1]  Upon reviewing the record and the parties' briefs, we

conclude that this appeal is without merit.  Accordingly, we summarily affirm the trial court's

decision.  See Rule 5A:27.

------

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] The termination hearing also dealt with another child, A.J.  However, DNA testing
showed that Jackson was not A.J.'s biological father, and, therefore, this appeal does not pertain
to A.J.  Accordingly, we mention A.J. in this opinion only to the extent necessary to explain the
procedural or factual history surrounding the termination of Jackson's parental rights to B.J.,
M.J., and I.J.  As of the August 1, 2007 termination hearing, B.J. was nine years old, M.J. was
eight years old, and I.J. was five years old.

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

So viewed, the evidence proved that on September 29, 2005, the Lancaster Department of Social Services (LDSS) received a complaint that Iliana Melendez, the children's mother, had left B.J, M.J, and I.J. with relatives for days without any indication of her whereabouts. On that same day, LDSS received another call reporting Melendez's whereabouts. Thereafter, LDSS found Melendez with her youngest child, A.J., in a house that did not contain any food for the child. Melendez, a cocaine addict, appeared intoxicated. A.J. was soaked in urine, and there were no clean diapers for the child. Melendez agreed she needed help for her drug addiction, and on that date voluntarily agreed to entrust B.J., M.J., I.J., and A.J. to LDSS. At that time, Jackson was in jail.

On October 20, 2005, LDSS filed a Child In Need of Services (CHINS) petition with respect to the children. As a result of a hearing held on October 25, 2005, the Lancaster County Juvenile and Domestic Relations District Court (J&DR court) transferred custody of all four children to LDSS. At an adjudicatory hearing on November 1, 2005, the J&DR court found the children in need of services. On November 21, 2005, after LDSS completed certain home studies, B.J. and M.J. were placed with Stacy Taylor and James Muhammad, Jackson's relatives, and A.J. and I.J. were placed with Wayne and Mildred Ransome, also Jackson's relatives. Those relatives lived close to where Jackson and Melendez were living at the time.

Approximately three months later, Taylor and Muhammad petitioned the J&DR court to be relieved of custody of B.J. and M.J. Taylor and Muhammad reported being constantly harassed by and having confrontations with Melendez and Jackson, and did not believe they could deal with B.J. and M.J. any longer. As a result, on February 28, 2006, B.J. and M.J. were placed with Braley and Thompson, a therapeutic foster agency located in Richmond, Virginia. In April 2006, the J&DR

court approved LDSS's foster care service plans for B.J. and M.J. and continued custody of the children with LDSS.

On August 8, 2006, the J&DR court relieved the Ransomes of custody of A.J. and I.J. based on their petition alleging they had a physical altercation with Jackson. I.J. and A.J. were also placed with Braley and Thompson.[2] At the August 2006 hearing, Jackson and Melendez were screened for drugs and both tested positive for cocaine, after having previously stated that they had not recently used drugs.

Michele Simmons, an LDSS social worker and the children's caseworker, testified that Jackson told her his substance abuse and cocaine addiction dated to the 1980's. LDSS offered both parents counseling services. However, Jackson failed to keep an intake appointment on June 26, 2006. He did keep an intake appointment on September 14, 2006, wherein he agreed to attend intensive substance abuse group services, but then, subsequently failed to attend group therapy on September 28, 2006.

On October 3, 2006, the J&DR court held a dispositional hearing with respect to I.J and A.J. and a foster care review hearing with respect to B.J. and M.J. The J&DR court approved foster care service plans for I.J. and A.J. At that hearing, Melendez appeared to be intoxicated. As a result, the J&DR court ordered that both parents be screened for drugs.

After the October 3, 2006 hearing, LDSS lost contact with Jackson and Melendez. LDSS tried to contact Jackson without success, and neither parent contacted LDSS. Eventually, LDSS learned that on January 10, 2007, Melendez was sentenced to 120 days incarceration in Massachusetts for possession of cocaine on an outstanding 2005 warrant and that in February 2007, Jackson was arrested in Massachusetts for failing to appear at his scheduled criminal sentencing hearing in Virginia. The authorities eventually returned Jackson to Virginia.

---

[2] All four children were placed with foster care families by Braley and Thompson.

On March 6, 2007, the J&DR court held a permanency planning hearing for the children. At that time, the foster care plan goal was changed to adoption and was approved by the J&DR court.

By orders dated April 27, 2007 and June 8, 2007, the Lancaster Circuit Court sentenced Jackson to a total of fifteen years and six months in the penitentiary for two counts of distributing cocaine and one count of failure to appear, with ten years suspended, for an active sentence of five years and six months.

In May 2007, LDSS filed petitions to terminate the residual parental rights of Melendez and Jackson as to all four children. The J&DR court subsequently granted those petitions. Jackson appealed that order to the trial court for a *de novo* hearing.

With respect to the parents' visitation with the children since being placed in foster care, Dawn Mulrain, the Braley and Thompson case manager for the children since May 2007, testified that the first visit scheduled for June 2, 2006 was cancelled due to "conflict with transportation from Mr. Jackson." On June 14, 2006, Jackson visited B.J. and M.J. at Braley and Thompson in Richmond. On August 22, 2006, Jackson and Melendez failed to attend a scheduled visit. On August 29, 2006, Jackson and Melendez visited the children, and then on September 14, 2006, both parents visited B.J. and M.J. I.J. and A.J. had a schedule conflict that day. On September 28, 2006 and October 24, 2006, Jackson and Melendez failed to attend scheduled visits with the children, who were at Braley and Thompson waiting for them. The visits that occurred were normally one hour in duration. After September 14, 2006, Jackson never visited the children.

Mulrain acknowledged that since May 2007, while Jackson had been incarcerated, he had sent the children one card and approximately four letters. He had also sent a check for I.J.'s birthday, which Braley and Thompson had not cashed. Mulrain acknowledged that some letters had been sent to the children before May 2007, but she did not know how many or if they were from

Jackson or Melendez. Simmons also acknowledged that Jackson "had written to the children on several occasions." However, she testified that she was not aware of anything Jackson had contributed to the development of the children since they were placed in foster care in September 2005.

Mulrain testified that the children are doing well in their pre-adoptive homes, their schools, and in their community. They have therapy twice a month. They have a sense of safety and security now that they did not have when they first came under the care of Braley and Thompson. The children have told Mulrain they are happy where they live and that they feel safe, loved, and well taken care of. The children related information to therapists indicating they had witnessed domestic violence and drug use when living with their parents.

Jackson, incarcerated in Virginia since February 2007, testified at the August 2007 termination hearing that he had served seven months of his five and one-half year sentence. Jackson admitted he had been in drug rehab in 1988 for heroin, in 1993 for cocaine, and most recently from 2006 to February 2007 for cocaine. He claimed he had not used cocaine since a few weeks after the October 2006 J&DR court hearing. He admitted he was in jail in September 2005, when Melendez entrusted the children to LDSS, but that he was released from incarceration November 6, 2005, and remained out of jail until February 2007. He claimed he had daily contact with the children while they were with his relatives prior to B.J.'s and M.J.'s placement with Braley and Thompson in February 2006, and A.J.'s and I.J.'s placement with Braley and Thompson in August 2006. He also asserted that he sent a card to B.J. for his October birthday, a card and money to M.J. for his January birthday, and money to I.J. for her June birthday. Jackson acknowledged that he left Virginia after the October 3, 2006 J&DR court hearing, but claimed he did so in order to take Melendez to Massachusetts for detox and to obtain drug rehabilitation, even though he knew he had an upcoming sentencing hearing scheduled in Virginia. He stated that he did not attend the October 24, 2006

- 5 -

scheduled visit with the children because he was in Massachusetts. He claimed he missed the other scheduled visits with the children at Braley and Thompson because he got lost, his car battery died, and he had other transportation issues, while admitting that LDSS had told him that they would pay for a taxi or gas vouchers for transportation to Braley and Thompson for those visits. He admitted to three prior felony burglary convictions.

Based upon this record, the trial court found clear and convincing evidence supported termination of Jackson's residual parental rights pursuant to Code § 16.1-283(C)(1) and 16.1-283(C)(2).

> "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it."

Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citations omitted). Recognizing that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action,'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (citation omitted), we, nevertheless, "'presume[] [the trial court has] thoroughly weighed all the evidence [and] considered the statutory requirements,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

Code § 16.1-283(C)(1) provides in pertinent part as follows:

> The residual parental rights of a parent . . . of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent . . . or other voluntary relinquishment by the parent . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> The parent . . . [has], without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other

rehabilitative agencies to communicate with the parent . . . and to strengthen the parent-child relationship. Proof that the parent . . . [has] failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition . . . .

Thus, to grant LDSS's petition for termination pursuant to Code § 16.1-283(C)(1), the trial court was required to find by clear and convincing evidence that (1) termination was in the best interests of the children; (2) LDSS made "reasonable and appropriate" efforts to communicate with Jackson and strengthen Jackson's relationship with the children; (3) Jackson failed, without good cause, to maintain continuing contact with the children for a six-month period following their placement in foster care; and (4) Jackson failed, without good cause, to provide or substantially plan for the children's future for a six-month period following their placement in foster care.

On appeal, Jackson's sole argument with respect to the trial court's termination of his parental rights under Code § 16.1-283(C)(1) is that LDSS failed to prove by clear and convincing evidence that Jackson failed, without good cause, to maintain continuing contact with the children for a period of six months following their placement in foster care. His argument does not address the other elements contained in Code § 16.1-283(C)(1), as cited above, and therefore, we will not address them.

This record shows that Jackson made little or no effort to maintain continuing contact with the children. He visited B.J. and M.J. on three occasions between February 2006 and his incarceration in February 2007. In addition, he visited I.J. on only one occasion between early August 2006 and February 2007. Jackson's only contact with the children between October 2006 and August 2007, consisted of, at most, a birthday card or total of four letters. Jackson failed to keep four scheduled visits with the children, even though LDSS had offered Jackson assistance with transportation. After October 3, 2006, Jackson left Virginia and went to

Massachusetts.  Thereafter, he failed to maintain any face-to-face or verbal contact with LDSS or the children.  Jackson offered no good cause for his lack of continuing contact with the children.  Thus, based upon this record, we cannot say the trial court was plainly wrong or without evidence to conclude that Jackson failed to maintain continuing contact with B.J, M.J., and I.J. for a period of six months after their placement in foster care.  Accordingly, we find no merit in Jackson's argument and, therefore, conclude the trial court's decision terminating Jackson's parental rights pursuant to Code § 16.1-283(C)(1) was supported by clear and convincing evidence.

Jackson also contends the trial court erred in terminating his residual parental rights pursuant to Code § 16.1-283(C)(2).  However, where a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court and, if we so find, need not address the other grounds.  See Boone v. C. Arthur Weaver Co., 235 Va. 157, 161, 365 S.E.2d 764, 766 (1988).  Thus, because we find that clear and convincing evidence supported the trial court's termination of Jackson's residual parental rights under Code § 16.1-283(C)(1), we need not address the trial court's ruling terminating Jackson's residual parental rights under Code § 16.1-283(C)(2).

Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

Affirmed.